1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

8
9
10
11
12
13
14

Carol Dearing,                              )        No.  CV-20-00747-PHX-SPL
                                            )
                    Plaintiff,              )
                                            )        **ORDER**
vs.                                         )
                                            )
Magellan Health Incorporated, et al.,       )
                                            )
                    Defendants.             )
                                            )
_____       )

15     Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil

16   Procedure ("Rule") 12(b)(1) and 12(b)(6). (Doc. 15) For the following reasons, the Motion

17   will be granted.[1]

18   **I.      BACKGROUND**

19     This case arises out of a data breach that occurred on May 28, 2019. (Doc. 1 at ¶ 4)

20   Defendant Magellan Health, Incorporated ("Defendant") discovered on July 5, 2019, that

21   one of its employees fell for a phishing scheme that allowed a third party to access his or

22   her email account. (Doc. 1 at ¶¶ 3-4) Defendant notified its customers of the breach on or

23   about November 8, 2019. (Doc. 1 at ¶ 3)  On April 17, 2020, Plaintiff Carol Dearing

24   ("Plaintiff") filed a complaint in this Court, on behalf of herself and all others similarly

25   situated (Doc. 1 at ¶ 75), alleging negligence, negligence per se, breach of implied contract,

26

27     [1] Because it would not assist in resolution of the instant issues, the Court finds the
28   pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R.
     Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

unjust enrichment, and violations of the Arizona Consumer Fraud Act. (Doc. 1 at 27-37) On May 13, 2020, Defendant filed a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6). (Doc. 15) The motion is fully briefed and ready for review. (Docs. 15, 16, 21, 22)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (quotation omitted). "Allegations raised under Rule 12(b)(1) should be addressed before other reasons for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses raised become moot." *Kinlichee*, 929 F. Supp. 2d at 954. "A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006)); *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Renteria*, 452 F. Supp. 2d at 919. "When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." *Id.* "A plaintiff has the burden of proving that jurisdiction does in fact exist." *Id.*

## III.    DISCUSSION

Defendant argues that the Complaint should be dismissed because Plaintiff failed to establish standing under Rule 12(b)(1) and failed to state a claim upon which relief may be granted under Rule 12(b)(6). (Doc. 16 at 8, 12) Specifically, Defendant asserts that Plaintiff lacks Article III standing because she has failed to establish an injury-in-fact.

"Under Article III, § 2 of the Constitution, federal courts have jurisdiction over a

dispute only if it is a case or controversy." *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "To state a case or controversy under Article III, a plaintiff must establish standing." *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 133 (2011); *see also Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (Article III standing limits judicial review to cases and controversies). "The constitutional requirement of standing has three elements: (1) the plaintiff must have suffered an injury-in-fact—that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) the injury must be causally connected—that is, fairly traceable—to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and (3) it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court." *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982)).

The plaintiff bears the burden of establishing the existence of a justiciable case or controversy, and "'must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734, (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, (2006)). "A plaintiff must establish standing with the 'manner and degree of evidence required at the successive stages of the litigation.'" *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561). "[A]t the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1547 (2016) (internal quotations omitted).

Here, Plaintiff's asserted injuries are as follows: Defendant's data breach (a) caused "imminent and impending injury arising from the increased risk of fraud and identity theft"; (b) caused Plaintiff to spend time and money monitoring her accounts, contacting credit bureaus and credit card companies, and otherwise attempting to protect her information;

(c) caused money to be paid to Defendant that would not have been paid had Defendant disclosed that it lacked sufficient "data security practices" to safeguard customers' protected health information ("PHI") and personally identifiable information ("PII") from theft; and (d) caused damages and diminution in value of Plaintiff's PHI and PII. (Doc. 1 at 20–21) Upon review, the Court finds that Plaintiff's pleadings do not allege facts that constitute an injury-in-fact that is a "concrete and particularized invasion of a legally protected interest that is actual or imminent" and "not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560.

### A. Risk of fraud and identity theft

Plaintiff alleges that she is at risk of an imminent and impending injury arising from the risk of fraud and identity theft caused by the data breach. (Doc. 1 at 20–21) In order to prove an injury-in-fact in a data breach case, a plaintiff must show the harm has already occurred, there is a "substantial risk that the harm will occur," or that the threatened injury is "certainly impending." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018); *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). There must be "a credible threat of real and immediate harm stemming from the theft of [data]." *Krottner*, 628 F.3d at 1143. The plaintiff need not suffer data misuse or identity theft before he or she has an injury for standing purposes, but the data must be actually stolen and taken in a "manner that suggests it will be misused." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214–16 (N.D. Cal. 2014). Plaintiff cites *Adobe* to support her allegations that she need not suffer identity theft before she brings her suit, but neglected to acknowledge, as Defendant did in its response, that the *Adobe* case is distinguishable from the case at hand. In *Adobe*, there was evidence the hackers stole the customer data, used Adobe systems to decrypt customer credit cards, and used the stolen data to discover vulnerabilities in Adobe products. *Id.* The PII in that case was deliberately targeted. *See also Zappos.com*, 888 F.3d at 1027–28 (plaintiffs showed evidence their information was stolen and used to take over their email accounts and identities); *Krottner*, 628 F.3d at 1143 (a hacker stole an employee laptop containing sensitive PII and retained possession of the

4

laptop and data); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) (possible injury when a confirmed hacker accessed the defendant's database and copied email and social networking logins of users). Other courts have found no injury when there was no theft or targeting of information. *See Stasi v. Inmediata Health Grp. Corp.*, No. 19CV2353 JM (LL), 2020 WL 2126317, at 6 (S.D. Cal. May 5, 2020) (finding no injury despite a breach  that made the plaintiffs' PII and PHI temporarily available online when there was no evidence the information was copied, saved, or misused).

Here, Plaintiff's PII and PHI did not appear to be deliberately targeted, and there is no evidence the information was even stolen. Plaintiff's complaint includes the notice Defendant sent to affected parties, which stated that the phisher may have seen emails in the employee's account while attempting to send out spam. (Doc. 1 at 6–7) These emails contained information such as names, social security numbers, health plan ID numbers, health plan names, healthcare providers, and drug names; *i.e.*, PHI and PII. (Doc. 1 at 7) The notice also stated Defendant had no proof the phisher actually saw any emails in the account. (Doc. 1 at 6) Even if he or she did see the emails, his or her intent was to send spam using a Defendant employee email address. Furthermore, upon discovering the breach, Defendant locked the employee's account and prevented the phisher from accessing it further. Plaintiff even includes that information in her complaint and fails to show the phisher had previously obtained or is currently in possession of her information and/or the information of other customers. (Doc. 1 at 6–7) As a result, Plaintiff fails to show her injury is "certainly impending" or that there is a "substantial risk that harm will occur." Instead, her alleged risk is entirely speculative.

**B.  Time and money spent**

Plaintiff alleges that she has spent time and money monitoring her accounts and contacting credit bureaus and credit card companies to protect her information. However, when a risk of future harm is speculative, a plaintiff cannot "manufacture standing by choosing to make expenditures based on hypothetical harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Defendant mentions

the *Clapper* holding in its motion to dismiss (Doc. 15 at 12) and Plaintiff fails to address it in her response. (Doc. 21) Furthermore, Defendant offered Plaintiff free personal information protection immediately after the breach, including credit monitoring, a reimbursement policy, and a fully managed ID theft recovery service. Plaintiff need not have spent any time or money at all, but she chose to make those expenditures. The Northern District of California encountered a similar contention in *Ruiz v. Gap, Inc.*, in which the plaintiff sought recovery of costs incurred over more than a year while monitoring his accounts and credit cards. 622 F. Supp. 2d 908, 915 (N.D. Cal. 2009), aff'd, 380 F. App'x 689 (9th Cir. 2010). The court found (1) there was no evidence of significant exposure of the plaintiff's personal information and no evidence that he was a victim of identity theft and (2) plaintiff's contention that the monitoring was necessary held little weight because he had the opportunity to receive free credit monitoring from the defendant and declined. *Id.* Therefore, the court found the plaintiff did not meet his evidentiary burden.

Relatedly, the Court now finds that Plaintiff's unnecessary expenditures are not an injury giving rise to standing.

## C. Money conferred

Plaintiff is a member of TennCare, Tennessee's state-sponsored Medicaid program (Doc. 1 at 2, ¶ 1). In her Complaint, Plaintiff alleges that Defendant received payment based on contracts with TennCare and other Medicaid providers to manage and administer pharmaceutical benefits. (Doc. 1 at 2). Plaintiff further asserts that because of the breach in security, Defendant should not be "permitted to retain the money belonging to Plaintiff and Class Members" that was paid under the contract. (Doc. 1 at ¶ 126)

Defendant asserts that Plaintiff never paid it any money. (Doc. 16 at 9) As a result, Defendant argues Plaintiff cannot maintain an injury. (Doc. 16 at 9) Plaintiff argues she suffered damage as a result of Defendant's receipt of payment under the contract based on her status as a third-party beneficiary and can recover because her PII and PHI was exposed. (Doc. 21 at 10–12) Defendant never addresses the third-party beneficiary

argument in their pleadings, instead glossing over it by realleging Plaintiff never paid them any money. (Doc. 22 at 6)

"To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). The intended beneficiary does not need to be mentioned in the contract, but "must fall within a class clearly intended by the parties to benefit from the contract." *Id.* "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Id.* (*citing* Restatement § 302(1)(b) cmt. d).

Here, Plaintiff states that by entering the contract with Defendant, TennCare expected Defendant to safeguard their members' PII and PHI. (Doc. 1 at ¶123–125)[2] The Northern District of California has recognized a third-party beneficiary cause of action for individuals unnamed in a contract who relied on the parties to safeguard their PII. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *18–19 (N.D. Cal. May 27, 2016). However, even if Plaintiff may have asserted a viable third-party beneficiary claim, and even if there was a breach of the contract between Defendant and TennCare, Plaintiff has not alleged any cognizable harm as a result of the breach for the foregoing reasons. *See supra* § III(A)–(B). "In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant [or prove she is a third party beneficiary], a breach of the contract by the defendant, *and* resulting damage to the plaintiff." *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012) (internal citations omitted) (emphasis added). Plaintiff failed to allege damages because she failed to show her information was stolen or

---

[2] Because the Court did not consider the contract between TennCare and Magellan Medicaid Administration, Inc., the court finds the Defendant's Request for Judicial Notice (Doc. 17) to be moot.

misused. Moreover, Plaintiff has not cited any cases to the contrary, instead citing to cases she claims prove that there need not be a contractual relationship to give rise to standing. The Court finds those cases to be inapposite. *See Lujan*, 504 U.S. 555; *Raines v. Byrd*, 521 U.S. 811 (1997); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1 (2004). (Doc. 21 at 12) None of these cases involved contractual disputes or injuries to third-party beneficiaries arising out of breach of contract, and thus the courts did not consider the question of whether a contractual relationship was required. Regardless, there must be an injury as a result of the breach of contract, and here there was no injury to Plaintiff.

### D.  Diminution in value to PHI and PII

Finally, Plaintiff alleges that her PHI and PII are now damaged and have diminished in value as a result of the hack. (Doc. 1 at 20–21) She does not provide a basis for this allegation, other than the notice, which does not support the facts asserted. *See supra* §(A).

Although not yet addressed by the 9th Circuit or District of Arizona, the Court agrees with decisions from the Northern District of California, which have been unwilling to find standing based solely on a theory that the value of a plaintiff's PII has been diminished. Thus, a plaintiff must assert another cognizable injury beyond diminution in value to support such a claim. *See In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal 2012) (injury arose from a violation of the Wiretap Act *and* accessing or tracking personal information, which is an independent basis "beyond theoretical allegations that personal information has independent economic value"); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) (no injury where PII was diminished in value without a showing that the plaintiff had attempted or would later attempt to profit off his PII's value, and without showing of other injury). Diminution in value is not on its own a sufficient injury to establish Article III standing. Here, because Plaintiff has not asserted any other sufficient injuries, Plaintiff has not established Article III standing.

///

///

## IV.    CONCLUSION

For the foregoing reasons,[3] the Court finds that Plaintiff lacks standing to bring this claim. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 15) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (Doc. 1) is **dismissed** with prejudice for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Defendant's Request for Judicial Notice (Doc. 17) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action.

Dated this 3rd day of September, 2020.

Honorable Steven P. Logan
United States District Judge

---

[3] Because the Court finds the Plaintiff lacks standing in this case, it need not address Defendant's Rule 12(b)(6) arguments because this Court does not have subject matter jurisdiction. *See Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013).